Ms. Craft Good morning still and it may please the court. My name is Teresa Craft and I represent Ms. Redding in a case against the TSA which is an agency within Department of Homeland Security. We pled in the complaint that Ms. Redding was discriminated against when there was a failure to accommodate her disability while she was employed at TSA. She started her employment in 2011 as a as a federal air marshal which required her to have corrected vision of 2020. She did have that. She wore glasses and or contacts while she flew. She served in that position well until 2015-2016. At that time she was placed on light duty status. She was transferred from JFK and down to headquarters in Reston, Virginia. She was given a ground position, a regional coordinator. The regional coordinator position required her to fly once per month. However, during the time that she served. What did that mean? She was required to fly once a month so she flew as an air marshal once a month? The position had a requirement that she would fly once a month. However, what's it mean when they required to fly? Oh they oh I'm so sorry. She's an air marshal or was but then she was transferred to a ground job. Right. I had to fly once a month. Was she flying as an air marshal? Yes. Okay. Yes. And what's a an air marshal is a that what they're on a plane and they're yeah they're in disguise and they're just as security. Yeah they're essentially security for the airplane. They fly under under cover for lack of a better term. They are under cover. They're not announced. She only did it once a month after this but she couldn't see right. Actually she didn't do it. Once she was transferred to the ground station at headquarters she was accommodated and wasn't required to fly. So she wasn't flying at all? She was not flying. So the once a month didn't apply? Did not apply to her in that in that position. She was just she no longer was an air marshal. Technically her title was federal air marshal. That was the umbrella of her employment. But she served in field operations as a regional coordinator. Regional coordinator. Yes. But that was all of the what she was doing was itself the accommodation. That's our argument. Our argument is that she was accommodated for two years before they forced her into a reassignment. But they allowed her to take this position on a temporary basis and and then but you you're just saying well no I have a right to be accommodated on a permanent basis not withstanding the fact that I can't fly and the question is this was an accommodation to begin with and it was for a temporary basis and aren't you taking advantage of the employers generosity here? I don't think so because the employer had a responsibility to make a reasonable accommodation and they determined in 2015 or I'm sorry 2016 that it was a reasonable accommodation. For her to be a field coordinator or whatever you call it. It was a reasonable accommodation to have her be in the region in the end headquarters as a regional coordinator. And she didn't fly anymore? No. But how can we have, how is it a reasonable accommodation to have someone as a position of a federal air marshal who cannot due to deteriorating eyesight fly? I mean when you look at it on its face air marshals should be you know it's not unreasonable to require air marshals to fly. And if if we were to upset what the district court did here imagine the imagine the ripple effects through the FAL and everybody would say well we can still be an air marshal and we won't have to fly because look look what they did over here they allowed her to take this temporary position and she didn't have to fly and then people throughout the FAL will say well if she got that kind of accommodation I can't fly right now either so I'm due this accommodation. In other words I don't understand what is unreasonable about wanting a federal air marshal to fly. That that's the whole point. And I think that if her job position required her to fly on a regular and by regular I mean weekly basis the way that she had when she was stationed in JFK then I think you're right the you know saying that her 90% of her job was to fly on an airplane with a gun and be prepared to use the gun to apprehend. That was the job she took and what she did for five years. That's the job that she took from 2011 until 2016 so yes five years. Now in 2016. So when she took the job or when they hired her in 2011 she had an eye problem. Yep. And they knew it. Oh yeah. Her her eye acuity and this is not in the complaint. So her eyes got worse. Her eyes did not get worse. They didn't. Something changed in the policy. Her medical conditions as a whole changed but the eyesight and the and the reason that they cited her being medically unfit to fly. How did they end up hiring air marshals that can't see right? They they've used the the criteria that the corrected vision is the one that counts not the uncorrected vision. So her corrected vision is 2020. I keep coming back to what I think was my esteemed colleagues question. How can we have how can we say to the FAM that you have to provide reasonable accommodations that do not require FAMs to fly? Because what we're getting close to is saying you've got to provide a reasonable as a matter of reasonable accommodation jobs in which FAMs don't need to fly and that just seems to me a contradiction almost in terms. No I don't think so and the distinction may be the fact that the the title of federal air marshal encompasses more than just the person that flies and so you have people on the ground who do who. Is that what they called the field coordinators? Yes. So she was she was had been an air marshal flying and then she they made her a field coordinator and she was a non flying air marshal. Right in the federal government there are many times where the title that you're hired under. Why did she need accommodation beyond that there? Well the the air marshal service the federal air marshal medical services in 2016 she went through her normal biannual evaluation medical evaluation and they had questions and determined that she may not be fit to fly. Well didn't she get several accommodations? She got first of all this is whatever this regional coordinator is but then there was another accommodation with I guess what requested the FAM and TSA accommodate her by reassigning her to FLETC and that and that's another accommodation it seems to me they're accommodating and accommodating accommodating. And that process should never have happened because which process the process of the the transfer to FLETC. That was what she requested? No. That's the one in Georgia? Yes. That's a transfer to a different agency. She was told. She got a job with a different agency. She was told. She went to train law enforcement officers federal law enforcement officers in Georgia. Correct. She was told by the reasonable accommodation section of TSA that because medical said you can't fly we have to either reassign you you have to you will be terminated or you go through or you resign. Those were her three options. She already had and TSA had already started the paperwork for disability retirement when this memo came out in January of 2018. The... This seems like something of a moving target to me. I just we want this accommodation with this agency and this accommodation with another agency and and and the rest and not if there was a shell game going on I could understand it but I don't see that in in particular the question is has the employer been reasonable and when giving her the temporary job they were certainly reasonable and in giving her the job with FLETC they were certainly reasonable I mean they seem it doesn't seem to me that this is a sort of a hard shell employer and and again we would agree that if she if she were told that she could no longer perform the duties of the regional coordinator which she never was that were our confusion is why couldn't she continue she asked can I continue as the regional coordinator it is a job it will be open you know within 60 days of the date that you made this decision. But even the temporary quote light duty staff light duty status required some limiting flying. But it had been accommodated for her and it was working she had amazing. Okay but the point is the her her her her eyesight deteriorated while she was in the job but the the point is that the light the the light duty status or the regional coordinating status that required at least some time in the air some flight time and I think what was happening here was that the FAM felt that true to its name and its mission that they should be able to require that federal air marshals be able to fly and then was put on life light duty status but during that time her eyesight unfortunately regressed to the point where she couldn't where she could no longer fly and so at that time the next step that was taken again was to assign this individual to the FLETC which I understand was something that she was happy with or had requested but it all comes down basically as to whether with the FAM is allowed to say reasonably that somebody who is a member of that or an employee of FAM be at least able to fly some of the time and that's what the physical condition made made it very difficult to do it's not that I don't have sympathy for the situation I do but I just don't I don't see how we can say it was unreasonable to say for for the FAM to say if you're going to be an employee here you have to be able to spend at least some time in the air and that's that's what the agency's all about. And I'm well past my time so if it's okay I'd love to address. We've got seven full minutes for rebuttal. Yes. So let me ask Bob do you have any further questions? I'm good. I'll answer those questions on rebuttal. Thank you. Good morning your honors. Kirsten O'Connor assistant United States attorney for the defendants. So I wanted to clear up a couple of things that my counsel on the other side has raised here. The first is that nowhere in the complaint does Miss Redding allege that she asked to stay in the regional coordinator position after she was medically disqualified. It's simply not in the complaint. What she asked for after she received notice that she was medically disqualified. That she no longer met the medical standards was a reassignment. That is the only thing she asked for. That is what TSA gave her. She identified these two positions at the federal law enforcement training center. And TSA promptly transferred her there at her request. But I'd also like to clarify a few things about this regional coordinator job. And the complaint is a little unclear on this so I'd like to go through the timeline a bit. Miss Redding was assigned to the regional coordinator job not as light duty. There is nothing in the complaint that she was initially put in this job as an accommodation for any of her medical conditions. That was only transferred to light duty status after she was medically disqualified from flying. And that's because a regional coordinator job, as counsel indicated, is a federal air marshal job. It's a law enforcement position. Is a regional coordinator a promotion from being a regular federal air marshal? It sounds like it might be. I'm not aware of that, Your Honor. It's not a promotion. It's just another federal air marshal job. Not, that is my understanding. But they have to be able to fly. That's correct. So because it's a federal air marshal job, Miss Redding was required to meet the same medical standards in the regional coordinator job as any other federal air marshal. And although she wasn't flying as frequently in her complaint, she concedes that she was required to fly once a month. Now, when counsel says she wasn't flying once a month as a regional coordinator, that's simply not in the complaint. That, like I said, she only was transferred to light duty after she'd been in that job for over a year when she was eventually medically disqualified. And just to give a bit of context for your honors, the reason these medical standards are in place for federal air marshals. We're here on 12B-6, so we're just looking at the allegations of the complaint. Yes, Your Honor, that's correct. And I only mean to suggest that these medical standards are specifically linked to the essential functions of this law enforcement role. And when you're asking earlier about why does an air marshal need to fly, we use flying as kind of a shorthand. But really what it is, is flying is where the law enforcement activities take place. That's why there are these medical standards. And so, although when Ms. Redding was in the regional coordinator role, she was flying less frequently, she still had to be mission ready at all times. Which means ready to go in the air to fulfill her law enforcement functions at any time. And so of course here, Ms. Redding does not challenge the medical standards that she was subject to. She doesn't argue they were discriminatorily applied to her, that they weren't linked to the essential functions of the air marshal job. The term that I thought was interesting that you used was mission ready. And even if you're not flying all the time, you still have to be mission ready. And I think there are a lot of positions in any quasi or paramilitary unit where you may not be, the Army Reserves, I guess, is an example of that, and you're not going to be in combat all the time. But you've got to be mission ready, you've got to be mission ready. And it would seem to me to be a real blow to morale to send the message throughout the FAM. That no, after all, you don't have to be mission ready, and you don't have to be ready and able to fly to be a federal air marshal. And that seems to me to be just incorrect under the law. I think that's right, Your Honor, and that's why this light duty point is important. Light duty, as I'm sure Your Honors have encountered in other contexts, usually comes up when someone has a temporary disabling condition, recovering from surgery or the like. And in this case, Ms. Redding was temporarily put on light duty once she failed her physical to determine what would happen next. So she started the disability retirement process, she started the reasonable accommodation process. But the case law from this court is very clear and alleged in other cases that light duty is not a permanent accommodation. Employers are not required to change the essential functions that any employee performs or to put them on a permanent light duty status in order to accommodate a disability. And in fact, I think Ms. Redding acknowledges that because in her complaint when she says, I was medically disqualified, I submitted my request for an accommodation. And she specifically says, I asked for a transfer because I was no longer able to meet the essential functions of the federal air marshal role. And once again, I just want to take back where I started here, which is that ultimately, a failure to accommodate claim accuses an employer of refusing to accommodate someone who was qualified for the job. And here, Ms. Redding has really plead herself out of alleging that she could perform the essential functions of this law enforcement job. You're saying she pleaded her claim away? Yes, your honor. She admits she was required to fly. She admits she could not fly. And that the only accommodation she asked for was a transfer. And TSA gave her the transfer she wanted. And in fact, there are a lot of allegations in the complaint about what happened after she was transferred. But it's really all beside the point, because here, TSA did what its employee requested. And I just think there's no way that you could read this complaint as alleging that TSA failed to accommodate her disability. If your honors don't have any further questions, I would be happy to sit down or answer whatever questions you might have. Do you have any more questions? I'm good. Roger, do you have any questions? Just one, Ms. O'Connor, isn't it under this circumstance here, you're right, I think you talk about mission readiness and good point. But when they made her a regional coordinator, although it's under the rubric, if you will, of the overall umbrella of an air marshal. It seemed to be a position that they found that it worked for her because she could do that job in the occasional one time a month to do so. And they did that, and so the question is, seemed like below, don't we have to remand this for at least to get an analysis of whether now it really is an essential function? Yeah, you would like people to do everything, for example, like a desk sergeant. You're still a police officer. Well, you have to be ready, I guess, at some point, if somebody come through the precinct with a weapon, you're able to fire a weapon at them. But for the most part, every day you're at the desk. So once having done that, that's not what she did, however she got there, they said, that's fulfilling the job, that's a job I can do. But don't you have to have an analysis, and I don't think it's been done below, correct me if I'm wrong, as to whether this is an essential one, is it essential to that job? And just to clarify, are you suggesting that she would stay in the regional coordinator role without the flying requirement? Yes. Okay, because I was going to say that I think Ms. Redding's been quite clear that she cannot fulfill that requirement. And here, I find it helpful to step back a little bit, because like I said before, the flying is, it's a shorthand for law enforcement duty. This is still a law enforcement position, even though at the time, she was not in the air. And so, Ms. Redding is essentially asking this court to rewrite the entire nature of a federal air marshal job by exempting her from the law enforcement functions. And so, to be sure, I'm very confident that we could marshal significant evidence to support that contention, but there's plenty in the complaint here. Because, first of all, Ms. Redding, like I said, agrees that she was required to fly and could not, but she also- Well, is the job description in the record here? All we have is the complaint you just sold. Yes, Your Honor, that's correct. This is on a 12B6, so we can only look at the complaint. But Ms. Redding herself, in the complaint, suggests that she wanted a transfer specifically- Well, can we take judicial notice of whatever the job description is for a federal air marshal? Or whatever the job description is for a regional coordinator? There's nothing in the record that I can point you to at this point. But I would just note, Your Honors, that Ms. Redding herself, in the complaint, suggested she only wanted a transfer to another law enforcement position. And there's a lot of reasons for that related to pay and retirement benefits and other things. That's why she- I don't think that's in dispute, is it? That you've got to have some time in the air. And Judge King said you may have pleaded yourself out of your case. But I don't think it's in dispute that a federal air marshal would be able to spend some time in the air. That's her position, Your Honors. Because if she wanted a pure desk job, an administrative job, an analyst job, something like that, that would not be a federal air marshal position. She wouldn't be entitled to the law enforcement pay and benefits that she gets as a federal air marshal. So she's asking this court, as Judge Wilkinson indicated earlier, to rewrite the fundamental nature of this job, which is a law enforcement job with the capability to fly. So for those reasons- If we don't know exactly what the job description is, because we don't have it before us. Yes, Your Honor, we have to look at the complaints and- We just have to take what the allegations are in the complaint. Yes, and Ms. Redding says repeatedly throughout the complaint, not only that she was required to fly even in the regional coordinator role and could not, but that her various medical conditions were worsening over time. They impacted her ability to fulfill the, quote, normal duties or normal functions, something like that, of a federal air marshal. And as I said, it seems even from the complaint that she recognized that because when she was medically disqualified- As I understand, your position is that the complaint itself acknowledges that being able to fly is a job qualification. That's correct, Your Honor. And even if we accept that perhaps it wasn't, which of course we don't concede. As I stated at the beginning- But the complaint says it was. Yes, yes, absolutely. I just mean hypothetically, even if we were to imagine that she, that this was not an essential function, TSA gave her the accommodation she asked for. Now she's asking this court to kind of Monday morning quarterback and to say TSA should have done something different than what she requested at the time. She does not allege that she asked to stay in the regional coordinator role without flying. She asked only to be reassigned to the Federal Law Enforcement Training Center. There's nothing else in here about another accommodation she requested. TSA gave her what she asked for. She was ultimately dissatisfied with her position at the Federal Law Enforcement Training Center. But that has nothing to do with whether TSA discharges obligations to her. Which like I said, now repeatedly, was that they gave her the transfer she wanted. But the problem, she says she wasn't qualified for that job, didn't she? So when she went, my understanding is when she went to the Federal Law Enforcement Training Center, she had some struggles with her disability there, and that it just wasn't what she expected. And I think she talked about qualification too, that she didn't feel like she was qualified for that job. Correct, she does say that, and I think it's a little complicated because here, she identified the job to transfer her to. She doesn't allege that TSA vetting of that job was improper or anything like that. She just says TSA should have transferred me to another job more than a year later when I told them I wasn't happy. See, here's the problem, it's not you as counsel, but the problem here seems to me in terms of person who works for the federal government and doing a good job and trying to do those things, and she had visual acuity, one of the problems she had. She applied for a disability. Yes, Your Honor. Right, from that job. And rather than telling her that things really were going well for her and it looked very promising, instead they sent her to a place that was still under the rubric of air marshal, but a place where you'd only, if you had to do it, one time a month. And she went there, and then they said, well, you gotta be now, you gotta be mission ready. So now you either gotta go to a position that you may not be qualified for, or retire. And then when retirement comes through, and they said, well, we can't help you because you no longer in our agency. And you can't show that you can't do what's being done in the job they sent you to down in Georgia. And so it's kind of unfair in the sense that she's disabled, but they cut her off from her disability. Instead, she's at a place where they knew she couldn't fly. Right, remember, that's why she left the first place. But they sent her to a place under the idea, which was good, but they said, well, you don't have to fly her once a month, you can do that. And then she was, matter of fact, didn't she say that she really wasn't even flying once a month? Am I wrong about that? She said that today, that is not in the complaint. It's not in the complaint, but anyway, she would seem like she was doing fairly well. But then, of course, you say, no, the book says you got to be qualified, air mission, I mean, mission ready like everybody else. So you got to go to another place where you may not be qualified for or retire, which she already has a retirement disability in Florida, and she won it. And then she wins the battle and loses the war. That's something to me that's just intrinsically unfair to a federal employee, or any kind of employee. But particularly on the federal, in terms of serving our country, in terms of those jobs that many people go through. I mean, it's just incredible sacrifice, and people who work for the courts and all those places, the federal government, to say that now that you've won the disability, we sent you someplace where now we're going to enforce what you can't do, and then send you to another place where you're not qualified to do it. And when you win that, whoop, sorry, you're not allowed to have an agency. And you see, it's like the outfield. I completely understand your point, Judge Gregory. It certainly seems that she was, whatever information she was given was confusing to her for whatever reason. It's not exactly clear where the cross wires happened, but I do just want to make two quick points. One is that there's no indication in the complaint that she or TSA thought she was not qualified for the FLETC job at the time she was transferred. This is sort of a after the fact suggestion that she's made. But I also wanted to flag for the court, I think it's in a footnote in our brief, that obviously Ms. Redding took issue with how she was treated at FLETC, and also with how her disability retirement was processed by the Office of Personal Management. She has sued both of those agencies separately. So she's a little bit trying to bootstrap some of those allegations into our complaints, but our complaint really is limited to whether TSA properly accommodated her at the time. And like I said, they gave her the transfer she asked for at the time. And then it was only more than a year later that she came back and said, TSA, I don't like this job you transferred me into. At which point they said, well, if you need accommodations from FLETC, you need to deal with FLETC. If you have problems with your disability retirement, that's processed by OPM. So I certainly appreciate the bureaucratic challenge here, but I don't think it changes the actual analysis before this court, which is the reasonable accommodation process. The question I suppose here is simply whether the accommodation was reasonable. And as I read it, there were two accommodations here, at least as far as I can tell. The first accommodation was to put her in a light duty job. And then when what is conceded to be a requirement that you spend some time in the air, when that could no longer be met, a second accommodation was attempted. Which was to go to the FLETC, is something. So you have an agency here that has made two accommodations, not just one, but first for the light duty job. Then when it got to the point that you couldn't perform that because of a deteriorating eyesight. And there are people who unfortunately are laid off from their jobs, court security officers, for example. They have to go through a hearing test and an eyesight test and everything. And if they can't pass the hearing test or the eyesight test, then some other arrangements have to be made. But there was the first accommodation there to be an FAM with a light duty job. And when the qualification wasn't made, then there was a second accommodation attempted. And that was at her request, as I understand it. And so, am I wrong to look at this as a situation where there were two accommodations, both of which seemed to be agreeable to her, and in fact she had requested. And accommodations don't have to be perfect, they often aren't. But there are two of them here, two accommodations, one of which she was perfectly happy with, the other of which she requested. Is that a fair view? Like I said at the beginning, the complaint is a little unclear about the nature of the initial assignment to the regional coordinator job. My understanding was it was not initially light duty. Like I said, it was only light duty once she was medically disqualified. But the point I think is still well taken that once she was performing that job just fine, until her eyesight was too poor to qualify under the federal air marshal standards. She was put in light duty at that time, and then she requested a reassignment that was not subject to medical standards. Apparently appreciating that she could not stay on as a federal air marshal. So I agree with you that TSA did what it should have and could have done here. Unfortunately, I see I'm over time if I may. Yes? I wanted to ask you another question.  To your understanding, you represent the government. Yes, sir. There are two accommodations that Judge Wilkinson explained. That's the way I understood it, too. Are you challenging both of them, or just you only understand there's one? My understanding of the complaint is that Ms. Redding is challenging her reassignment as an accommodation. Reassignment where? To the Federal Law Enforcement Training Center. The second one. Correct. That's when she went to Georgia. That's correct. So there's no challenge to being the field coordinator and with the requirement that she fly once a month. That's correct. You understand there's no challenge to that. The challenge is to go to Georgia to the Federal Law Enforcement Training Center. That is correct, Your Honor. Yes. And was that what was requested? Yes, she says in her complaint that she identified these two jobs that she was willing to transfer to, and TSA granted that request. So the second accommodation was one that she requested? Yes. Thank you, Your Honors. We would ask that the district court's judgment be affirmed. Now, do we understand that correctly now? Well, I'd like to make one thing really clear. The only challenge is the one about Georgia. We're challenging the way that the process between the time that she was performing her job on light duty, she was then submitting paperwork for disability retirement. And unbeknownst to her, HR and everyone had said she's eligible for immediate disability retirement. They said that in November. They did not inform her of that. What they informed her, and when they informed her, was in January of 2018. They informed her that you no longer qualify. You have to either resign. Isn't that a different case, the question of disability determination and what else? But it's still here under TSAs. There are other issues that go to other. But- Why isn't this a disability claim or something, if that's the case? Because everyone has said that TSA is not responsible, but they are, because they discriminated against her on her benefits when they did not. Well, maybe so, but that again, whether TSA is responsible or not, that's a disability case. And there are lots of ways to get disability benefits, but that doesn't seem to me to be an issue here. That seems to me to be a different cause of action. Now it's- Excuse me, one of the things that this is, you put this as a hard luck case, and I would only say to you that every position in law enforcement, whether one is a security guard or whether one is a policeman or whatever, they have to pass annual tests. And those annual tests deal with physical ability. Here it's eyesight, but in other senses it's hearing. In some other senses it may be age. In other senses it may be physical endurance or whatever. But these are simply a part of life. It's a part of growing older. And I don't understand what is unreasonable in terms of the disability statutes about what happened here. As I say, I think the whole thing is a bit of a moving target. And I think that's why I don't speak for Judge King, but it certainly has been a problem in my getting my arms around it. It seems to me that, well, we say it's this, no, it's this, no, it's that, no, it's this, and it's not really coming into focus for me. We have always said that this is a failure to accommodate claim. Now, a component of that is the failure to- But she complained after she went to Georgia, and that is not the TSA. That's the Federal Law Enforcement Trading Center. She complained- That's run by another agency, isn't it? She complained when she went to FLETC because she did not have the knowledge that her disability retirement had been put through and that she was going to be approved for it. Who runs the Federal Law Enforcement Trading Center? Homeland Security. Homeland Security. And so it's the same umbrella agency. Correct. All right. Homeland Security and then TSA is Homeland Security. Right. But when it comes to TSA's approval or the OPM's approval of TSA's disability retirement when she's been transferred to FLETC, they say no. I would refer the court to a decision, Stanley v. City of Stanford. It's a fairly new case. It came out in June. It's US Supreme Court 606 US 46. It was decided in June of 2025. And that discusses whether you can bring a disability, regarding a benefit. And that's the issue at the heart of this is, she did not learn that she was no longer eligible for the disability benefits that TSA had said she required. Until well after they had transferred her. I also take issue with the idea that she requested. She was placed in an administrative limbo, bureaucratic loophole of a memo coming to her that does not, other than a side note, if you think you might be eligible for disability retirement, contact OPM, she'd already been in contact with OPM. TSA had already been in contact with OPM. TSA knew that her disability retirement was in the process of being approved. And yet they still told her, resign, be terminated, or retire. She's not eligible for retirement. She's not old enough. She resigns, she loses the benefit. She's terminated, she loses the benefit. So this new case regarding whether or not the benefits can be, is I think instructive on this course. And may offer some clarity on the issue. We've always raised the fact that she admitted in the complaint. Why wasn't this new case brought up in your initial argument? I believe that these were briefed before then, but in all honesty, I found it three or four days ago. Give the other side a chance to reply. I'm happy to do a 28-J. No, no, usually the time for that was in your initial argument. You deprive the other side of a chance to reply when you throw in something on rebuttal. That's what's happened here. And again, it's a fairly new case, and I believe that the majority of the briefing was done before. I have it in April, is when we did the briefing. I just, it still goes to the point that I don't understand why this isn't, why this was brought as a rehabilitation act claim, when there seemed to be other avenues that speak more pertinently to it. And in the future, I think if you want to bring this kind of thing up, fairness, basic fairness to the other side, would have you do it in your initial element, in your initial argument. And in order to give the other folks a fair chance to respond to it, which they haven't had here. Understood, thank you so much. My time is up. If there are no more questions, we would stand on our briefs and ask that you reverse. We will adjourn court and come down and re-counsel.
judges: J. Harvie Wilkinson III, Robert B. King, Roger L. Gregory